1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | HYPHY MUSIC, INC., a California
corporation,

12 |                 Plaintiff,

13 | v.

14 | JULIAN TAPIA SENA, an individual
doing business as DISTRIBUTION

15 | DIGITAL MUSIC WORLD; ISIDORIA
GLORIA POSADAS ROMANO, an

16 | individual; VERGE RECORDS
INTERNATIONAL, INC., a Tennessee

17 | corporation doing business as ONErpm,

18 |                 Defendants,

19 |

20 | _____

21 | JULIAN TAPIA SENA, an individual
d/b/a DISTRIBUTION DIGITAL MUSIC

22 | WORLD,

23 |                 Counterclaimant and
                Third-Party Plaintiff,

24 | v.

25 | HYPHY MUSIC, INC., a California
corporation,

26 |                 Counter-Defendant,

27 | and

28 |

Case No. 1:21-cv-00216-JLT-HBK

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE
COUNTER-CLAIMANT'S
COUNTERCLAIMS AND THIRD-PARTY
COMPLAINT AND GRANTING IN PART
AND DENYING IN PART MOTION TO
DISMISS**

(Doc. 29)

1

1  JOSE MARTINEZ, and individual;
   SALVADOR OLVERA RIOS, an
2  individual; and OLIMPO CARBAJAL, an
   individual,

3
                    Third-Party Defendants.
4

5                          **I.    INTRODUCTION**

6          Before the Court is Counter-Defendant Hyphy and Third-Party Defendants Jose Martinez,

7  Salvador Olvera Rios, and Olimpo Carbajal's (collectively "Counter-Defendants") motion to

8  strike and motion to dismiss Counterclaimant Julia Tapia Sena's counterclaims.  For the reasons

9  set forth below, the Court grants in part and denies in part the motion to strike and grants in part

10 and denies in part the motion to dismiss.

11                         **II.    BACKGROUND**

12         Mr. Martinez is the owner of Hyphy, a record label that produces, distributes, sells, and

13 licenses sound and audiovisual recordings in the United States.  (Doc. 29 at 8.)

14 Counter-Defendants assert that Mr. Olvera and his father formed and were co-owners of the

15 Mexican musical group "Grupo Ensamble."  (*Id.*)[1]  Mr. Olvera and Mr. Carbajal were members

16 of the band and owners of certain rights in works created and recorded by the band.  (*Id.*)  In

17 September 2017, Mr. Olvera and his father recorded the sound recording entitled *Tus Jefes No Me*

18 *Quieren* (the "Work").  (*Id.*)  In January 2019, Mr. Olvera allegedly signed an exclusive recording

19 and music publishing agreement with Hyphy, both individually and on behalf of the band.  (*Id.* at

20 8–9.)  Under this agreement, Mr. Olvera and the band transferred all rights in any existing work,

21 including the Work, to Hyphy.  (*Id.* at 9.)  In early 2019, Hyphy commissioned "Grupo

22 Ensamble" to record the Work, then subsequently released this recording on various digital

23 platforms in April 2019.  (Doc. 17, ¶ 10.)  Hyphy registered its ownership of the Work with the

24 United States Copyright Office in 2020.  (*Id.*, Ex. A.)

25         Mr. Tapia operates Distribution Digital Music World ("DDMW"), a record label and

26

27 [1] Mr. Tapia asserts that Ms. Isidora Gloria Posadas Romano originally formed "Grupo Ensamble" with
   her brother, trademarked the band in Mexico, and brought Mr. Olvera and his father into the band and
28 allowed Mr. Olvera's father to eventually take over musical direction while she maintained ownership.
   (Doc. 38 at 5.)

distributor.  (Doc. 25, ¶ 13.)  Between September 2019 and October 2020, Mr. Tapia allegedly acquired all administration, distribution, licensing, and royalty rights from Eduardo Medellin, Olimpo Carbajal, Salvador Olvera Rios, and Isidora Gloria Posadas Romano.  (Docs. 25, ¶¶ 14–17; 61-1 at 2–5; 58-2 at 2–8; 58-3 at 2–5; 58-5 at 2–5.)  Mr. Tapia allegedly obtained copyright registration of the Work in Mexico as a compilation with a different title that included the Work within it.  (Doc. 29 at 9.)  In April 2020, Mr. Olvera's father passed away, and Ms. Posadas allegedly approached Mr. Olvera with a proposal that she and Mr. Tapia assist Mr. Olvera with continuing the band.  (*Id.*)[2]  Mr. Olvera declined Ms. Posadas' proposal.  (*Id.*)

In the summer of 2020, Ms. Posadas and Mr. Tapia created an alleged copycat musical group under the identical name of "Grupo Ensamble."  (*Id.*)  By July 2020, Hyphy discovered that Mr. Tapia released an identical version of the Work on YouTube and Spotify through its distributer Verge Records International, Inc.—a Tennessee corporation doing business as ONErpm—via the identically named copycat group.  (Docs. 17, ¶ 11; 29 at 10.)[3]  Following this discovery, Hyphy submitted Digital Millennium Copyright Act ("DMCA") takedown notices for infringement to Spotify.  (Doc. 17, ¶ 12.)  In January 2021, Spotify allegedly responded by advising Hyphy that Mr. Tapia contested Hyphy's ownership of the Work.  (*Id.*)  Mr. Tapia alleges that only Ms. Posadas and Mr. Medellin, not Mr. Olvera and Mr. Carbajal, had ownership of the sound recording rights to the Work.  (Doc. 25, ¶ 21.)  Therefore, with Mr. Tapia purportedly owning the licensing, Mr. Tapia contends that he validly released his version of the Work.  (*Id.*)  In February 2021, after these discussions with Spotify, Mr. Tapia released two new albums on Spotify containing the Work, as well as a single of the Work.  (Doc. 17, ¶ 13.)  Accordingly, Hyphy initiated this lawsuit against Mr. Tapia on February 19, 2021.  (*See* Docs. 1; 25.)  In July 2021, Mr. Martinez voiced his "opinions and frustrations" regarding the situation over Facebook.  (Doc. 29 at 10.)  In response to those statements, on November 15, 2021, Mr.

---

[2] Mr. Tapia alleges that following the passing of Mr. Olvera's father, Mr. Olvera began making claims regarding his ownership of the band, prompting Ms. Posadas to register trademark of the band.  (Doc. 38 at 6.)  Ms. Posadas then served Mr. Olvera with a notice demanding that Mr. Olvera suspend or cease using the trademarks for the band, including on all digital platforms.  (*Id.* at 6–7.)
[3] Mr. Tapia alleges that it was in December 2020 that the Work was released on digital platforms.  (Doc. 25, ¶ 18.)

1    Tapia filed his third-party complaint against Counter-Defendants.  (*See* Doc. 25.)

2          Mr. Tapia alleges twelve causes of action against Counter-Defendants: (1) defamation

3    against Mr. Martinez and Hyphy; (2) intentional interference with contractual relations against

4    Mr. Carbajal and Mr. Olvera; (3) intentional interference with contractual relations against Mr.

5    Martinez and Hyphy; (4) breach of contract against Mr. Carbajal and Mr. Olvera; (5) fraudulent

6    misrepresentation against Mr. Martinez and Hyphy; (6) fraudulent misrepresentation against Mr.

7    Carbajal and Mr. Olvera; (7) declaratory relief: invalidation of copyright registration against

8    Hyphy; (8) intentional interference with prospective economic advantage against Mr. Martinez

9    and Hyphy; (9) negligent interference with prospective economic advantage against Mr. Martinez

10   and Hyphy; (10) conversion against Mr. Martinez and Hyphy; (11) theft by false pretenses against

11   Mr. Martinez and Hyphy; and (12) violation of California Business & Professions Code § 17200

12   against Counter-Defendants.  (Doc. 25.)  Counter-Defendants move to strike Mr. Tapia's

13   counterclaims under California Code of Civil Procedure § 425.16 and, in the alternative, dismiss

14   the claims under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 29.)

### III.    LEGAL STANDARD

**A.    Motion to Strike: California's Anti-SLAPP Statute**

17         Under California law, "SLAPP" lawsuits refer to "strategic litigation against public

18   participation," and they attempt "to chill or punish a party's exercise of constitutional rights to

19   free speech and to petition the government for redress of grievances."  *Rusheen v. Cohen*, 37 Cal.

20   4th 1048, 1055 (2006).  California's anti-SLAPP statute, California Civil Procedure § 425.16,

21   creates an avenue for pre-trial dismissal of SLAPP lawsuits that "masquerade as ordinary

22   lawsuits" but aim to deter "expression through costly, time-consuming litigation."  *Makaeff v.*

23   *Trump Univ.*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotations omitted); *Metabolife Int'l,*

24   *Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *Wilcox v. Superior Court*, 27 Cal. App. 4th

25   809, 819 (1994)).

26         Under the anti-SLAPP statute, a defendant may move to strike a claim or complaint when

27   the underlying conduct was an "act in furtherance of [the] right to petition or free speech."

28   *Wilcox*, 27 Cal. App. 4th at 818.  In relevant part, § 425.16 provides:

1

2
   > A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

3

4

5   Cal. Civ. Proc. § 425.16(b).

6       To evaluate an anti-SLAPP motion, courts use a two-step analysis. *Daniels v. Robbins*,

7   182 Cal. App. 4th 204, 214 (2010). First, the defendant bears the initial burden to demonstrate

8   the challenged causes of action arise from an act in furtherance of the defendant's right of petition

9   or free speech, including:

10
   > (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

11

12

13

14

15   Cal. Civ. Proc. § 425.16(e). The moving defendant must "identify[] all allegations of protected

16   activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396

17   (2016).

18       If the defendant satisfies this burden, the analysis moves to step two. At step two, the

19   burden shifts to the plaintiff to show a probability of prevailing on the challenged claim.

20   *Metabolife Int'l*, 264 F.3d at 840; *Daniels*, 182 Cal. App. 4th at 214. In order to satisfy this

21   burden, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported

22   by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence

23   submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811,

24   821 (2002). Each challenged basis for liability must be examined individually to determine if the

25   plaintiff has demonstrated a probability of prevailing, and if the plaintiff has failed to do so, then

26   only that basis must be stricken from the plaintiff's pleading. *Navellier v. Sletten*, 29 Cal. 4th 82,

27   89 (2002). When opposing an anti-SLAPP motion, the plaintiff must present admissible evidence

28   supporting a prima facie showing of facts supporting a judgment in plaintiff's favor. *Roberts v.*

5

1    *Los Angeles County Bar Ass'n*, 105 Cal. App. 4th 604, 613 (2003).  Thus, he may not rely on the

2    pleadings and evidence that would not be admissible at trial.  *Fashion 21 v. Coal. For Humane*

3    *Immigrant Rights of Los Angeles*, 117 Cal. App. 4th 1138, 1148 (2004).

4            The Ninth Circuit held that courts must apply federal rules of procedure when determining

5    the proper standard of review to assess the probability of prevailing.  *Planned Parenthood Fed'n*

6    *of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  The standard of review

7    depends on how the anti-SLAPP motion is styled.  *Herring Networks, Inc. v. Maddow*, 8 F.4th

8    1148, 1156 (9th Cir. 2021) (noting the "division of anti-SLAPP motions to strike into two

9    categories: motions that challenge the legal sufficiency of complaints and motions that challenge

10   the factual sufficiency of complaints").  When "an anti-SLAPP motion to strike challenges only

11   the legal sufficiency of a claim," the standard of review under Federal Rule of Civil Procedure

12   12(b)(6) applies.  *Planned Parenthood*, 890 F.3d at 834.  "[O]n the other hand, when an

13   anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule

14   of Civil Procedure 56 standard will apply.  But in such a case, discovery must be allowed, with

15   opportunities to supplement evidence based on the factual challenges, before any decision is

16   made by the court."  *Id.*

17   **B.    Motion to Dismiss: Rule 12(b)(6)**

18           Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

19   the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R.

20   Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

21   complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss,

22   "all allegations of material fact are taken as true and construed in the light most favorable to the

23   non-moving party."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir.

24   2020).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be

25   accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  In evaluating a Rule 12(b)(6)

26   motion, review is ordinarily limited to the contents of the complaint and material properly

27   submitted within the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.

28   1994).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732.

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## IV.    DISCUSSION

"[T]he anti-SLAPP statute and Rules 12 and 56 'can exist side by side . . . each controlling its own intended sphere of coverage without conflict.'" *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013) (quoting *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972). "A motion to strike brought under [the anti-SLAPP statute] may be based on a deficit in a complaint, including legal deficiencies addressable on a motion to dismiss under [Rule 12(b)(6)], or a failure to support a stated claim with evidence, analogous to a [Rule 56] summary judgment motion." *Robinson v. Alameda Cnty.*, 875 F. Supp. 2d 1029, 1047 (N.D. Cal. 2012). Though the anti-SLAPP motion to strike and the Rule 12 motion to dismiss serve similar purposes, the outcome of one motion does not always direct the outcome of the other. *See Hilton v. Hallmark Cards*, 559 F.3d 894, 901–02 (9th Cir. 2010) ("[A] Rule 12(b)(6) motion to dismiss may succeed where an anti-SLAPP motion to strike would not.").

Courts may grant a motion to dismiss while denying a motion to strike if the defendant's underlying conduct is not an exercise of the rights of free speech. *See id.* Conversely, courts may

7

1  grant a motion to strike while denying a motion to dismiss if the plaintiff's complaint was

2  well-pled, but the defendant's affidavits show that the plaintiff does not have a probability of

3  prevailing.  *See id.*  However, if a defendant satisfies the first step of the anti-SLAPP analysis,

4  then the plaintiff's failure to state a claim necessarily means that the anti-SLAPP motion should

5  be granted.  *See Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (affirming a

6  12(b)(6) dismissal and holding that, "[t]hus, [defendant] cannot demonstrate a probability that he

7  will prevail on his claim").  If the court grants an anti-SLAPP motion to strike based on a defect

8  in the complaint, the plaintiff should be permitted leave to amend his complaint.  *Verizon Del.,*

9  *Inc. v. Covad Communs. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("Granting a defendant's

10  anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to

11  amend would directly collide with Fed. R. Civ. P. 15(a)'s policy of favoring liberal amendment.")

12  Thus, Mr. Tapia's motion to strike will be considered before the Court will address the motion to

13  dismiss.

14  **A.      Motion to Strike Under California's Anti-SLAPP Statute**

15          1. Conduct in Furtherance of Speech

16          Defendants bear the initial burden of proving that the anti-SLAPP statute applies to their

17  conduct.  The defendant must show the alleged activities that form the basis of the asserted claims

18  are "protected," thereby bringing the claim within the scope of the anti-SLAPP statute.

19  *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014) (citing *Wallace v. McCubbin*, 196 Cal.

20  App. 4th 1169, 1183 (2011)).  To be protected under the statute, "the acts underlying the

21  plaintiff's cause of action [must] fall within one of the four categories spelled out in § 425.16(e)."

22  *Collier v. Harris*, 240 Cal. App. 4th 41, 50–52 (2015).  Counter-Defendants contend that the acts

23  underlying Mr. Tapia's claims fall under the third and fourth categories laid out in

24  § 425.16(e)—"(3) any written or oral statement or writing made in place open to the public or a

25  public forum in connection with an issue of public interest, or (4) any other conduct in

26  furtherance of the exercise of . . . the constitutional right of free speech in connection with a

27  public issue or an issue of public interest."  (Doc. 29 at 13.)  Specifically, Counter-Defendants

28  allege that its filing of DMCA takedown notices and Mr. Martinez's social media statements

1    related to those takedown notices were in furtherance of Counter-Defendants' right of petition or

2    free speech.  (*Id.*)

3        Generally, speech is protected under the First Amendment unless it falls within "a few

4    limited areas, which are 'of such slight social value as a step to truth that any benefit that may be

5    derived from them is clearly outweighed by the social interest in order and morality.'"  *R.A.V. v.*

6    *City of St. Paul, Minn.*, 505 U.S. 337, 382–83 (1992) (quoting *Chaplinsky v. State of N.H.*, 315

7    U.S. 568, 572 (1942)).  "First Amendment standards must give the benefit of any doubt to

8    protecting rather than stifling speech."  *Citizens United v. Fed. Election Com'n*, 558 U.S. 310,

9    327 (2010).  Courts have applied this broadly defined freedom of speech to hold that filing

10   DMCA takedown notices and statements made regarding the takedown notices are

11   constitutionally protected speech.  *See, e.g.*, *Lenz v. Universal Music Corp.*, No. C. 07-03783,

12   2008 WL 962102, at *4 (N.D. Cal. 2008); *Complex Media, Inc. v. X17, Inc.*, No. CV 18-07588,

13   2019 WL 2896117, at *3 (C.D. Cal. 2019).  The Court agrees that Counter-Defendants' takedown

14   notices and statements related to the notices fall under the First Amendment's speech protections.

15   Thus, the Court must next determine whether Hyphy's filing of DMCA takedown notices, and the

16   statements made regarding the takedown notices, are "in connection with a public issue or an

17   issue of public interest."  Cal. Code Civ. Proc. § 425.16(e)(4).

18       Though § 425.16 does not define "public interest," courts considering the issue have

19   construed the term broadly, in some cases finding that it "governs even private communications,

20   so long as they concern a public issue."  *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004);

21   *see also Nyard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1039 (2008) (discussing the 1997

22   amendments to the anti-SLAPP statute and the directive to construe the statute broadly).  Further,

23   courts have held that the definition of "public interest" under the anti-SLAPP statute includes

24   "conduct that could directly affect a large number of people beyond the direct participants."

25   *Rivero v. Am. Fed'n of State, Cty., and Mun. Emp., AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003).

26   There should be a degree of closeness between the challenged statements and the asserted public

27   interest; the assertion of a broad and amorphous public interest is not sufficient.  *See Weinberg v.*

28   *Feisel*, 110 Cal. App. 4th 1122, 1132–33 (2003).  Protection of acts made in connection with an

1    issue of public interest "serves the anti-SLAPP statute's purpose of encouraging *participation* in

2    an ongoing controversy, debate or discussion." *Du Charme v. Int'l Bhd. of Elec. Workers*, 110

3    Cal. App. 4th 107, 118 (2003) (emphasis in original).

4         Mr. Tapia contends that "a private copyright dispute regarding who can claim royalties is

5    not 'a matter of public interest'" because "[d]isclosing private information to a large amount of

6    people does not make the issue a matter of public interest." (Doc. 38 at 15–16.)  Indeed, courts

7    have held that merely distributing private information does not satisfy the public interest

8    requirement. *See Weinberg*, 110 Cal. App. 4th at 1133.  However, the filing of DMCA takedown

9    notices and public communications regarding those notices are not synonymous with merely

10   disclosing private information. *See Complex Media, Inc.*, 2019 WL 2896117, at *4 (explaining

11   that the filing and discussion of DMCA takedown notices directly impact a large community of

12   people).  In *Complex Media, Inc.*, the plaintiff had built a channel with 2.4 million subscribers

13   and used the defendant's content in various videos on that channel. *See id.*  The defendant filed

14   takedown notices to remove the videos using defendant's content, and plaintiff made statements

15   regarding these notices on the channel. *Id.*  The *Complex Media, Inc.* court held that the

16   defendant met its burden regarding the public interest requirement because "the DMCA notices,

17   when granted, directly affected every subscribers' access to the targeted videos on that Chennel

18   [sic].  Conduct affecting the availability of videos in this large online community is a concern for

19   each subscribing member of the public and thus, 'an issue of public interest.'" *Id.* at *4–5.

20         Counter-Defendants' filing of and statements regarding the DMCA takedown notices is

21   analogous to those in *Complex Media, Inc.*  Mr. Tapia alleges that he has suffered and will

22   continue to suffer "substantial loss of revenues, profits, goodwill, and value in the Work" because

23   of Counter-Defendants' filing of and statements regarding the DMCA takedown notices. (Doc.

24   25, ¶ 22.)  Mr. Tapia contends that Counter-Defendants' actions interfered with ONErpm's

25   contractual relationship with Spotify, Facebook, iTunes, YouTube, and other digital platforms,

26   which led to "suspension and/or ceasing" use of the Work on all platforms. (Docs. 25, ¶¶ 44–46;

27   38-1 at 4.)  Counter-Defendants' conduct affecting the availability of Mr. Tapia and ONErpm's

28   sound recordings on all digital platforms is a concern for each listening member of the public and

1    thus, is an issue of public interest.  Accordingly, Counter-Defendants have met their burden of

2    showing that the filing of and statements regarding the DMCA takedown notices are "an issue of

3    public interest" pursuant to Cal. Code Civ. Proc. § 425.16(e).  Thus, Counter-Defendants have

4    made a prima facie showing that Mr. Tapia's suit arises from an act in furtherance of

5    Counter-Defendants' rights of petition or speech, and the Court must move to the second prong.

6           2.   Probability of Prevailing on Claims

7           The burden now shifts to Mr. Tapia, who must demonstrate that the complaint is

8    "supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the

9    evidence submitted by the plaintiff is credited."  *Wilson*, 28 Cal. 4th at 821.  The determination is

10   made on the basis of pleadings, as well as supporting and opposing affidavits that would be

11   admissible at trial, stating the facts upon which the liability or defense is based.  Cal. Civ. Proc.

12   Code § 425.16(b)(2); *Fashion 21*, 117 Cal. App. 4th at 1148.  Each of Mr. Tapia's claims will be

13   addressed in turn.

14           a.    *Defamation*

15           Defamation "involves the intentional publication of a statement of fact that is false,

16   unprivileged, and has a natural tendency to injure or which causes special damage."  *Sonoma*

17   *Media Investments, LLC v. Superior Court*, 34 Cal. App. 5th 24, 37 (2019).  Libel "is a type of

18   defamation based on written or depicted communication."  *Balla v. Hall*, 59 Cal. App. 5th 652,

19   571 (2021).  In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court

20   explained that federal constitutional principles require persons who qualify as public officials or

21   public figures to prove an additional element—that the false communication was made with

22   actual malice.  *Id.* at 270–80.  Private plaintiffs, in contrast, need only show negligence.  *Id.*  A

23   statement is defamatory when it tends "directly to injure [a person] in respect to his office,

24   profession, trade or business, either by imputing to him general disqualification in those respects

25   which the office . . . peculiarly requires, or by imputing something with reference to his

26   office . . . that has a natural tendency to lessen its profits."  Cal. Civ. Code § 46(3).  "Statements

27   that contain such a charge directly, and without the need for explanatory matter, are libelous per

28   se."  *McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 112 (2007).  A statement can

also be libelous per se if "a listener could understand the defamatory meaning without the

necessity of knowing extrinsic explanatory matter." *Id.* If the false statement is not libelous per

se, a plaintiff must prove special damages. *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App.

3d 377, 382 (1986).

i.    Public Figure

"Whether an individual is a public figure is a question of law that must be assessed

through a totality of the circumstances." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881,

888 (9th Cir. 2016). There are two types of public figures: "Some occupy positions of such

persuasive power and influence that they are deemed public figures for all purposes. More

commonly, those classed as public figures have thrust themselves to the forefront of particular

public controversies in order to influence the resolution of the issues involved. In either event,

they invite attention and comment." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). "All

purpose" public figures are those in which "an individual may achieve such pervasive fame or

notoriety that he becomes a public figure for all purposes and in all contexts." *Id.* at 351. A

"limited purpose" public figure, on the other hand, "voluntarily injects himself or is drawn into a

particular public controversy and thereby becomes a public figure for a limited range of issues."

*Id.*

Because the public figure analysis is based on the totality of the circumstances, there is no

bright-line level of notoriety that one must achieve to be deemed an all-purpose public figure.

*See Manzari*, 830 F.3d at 888. In *Manzari*, the Ninth Circuit held that the plaintiff, an adult film

actress, was a public figure because the plaintiff conducted television interviews related to her

success, had 27,000 online subscribers, and 841,271,545 video downloads. *Id.* Similarly, in

*Solano v. Playgirl, Inc.*, the Ninth Circuit held that the plaintiff, an actor best known for his

three-year stint on "Baywatch," was a public figure because of his notoriety on the show and a

resulting magazine interview. 292 F.3d 1078, 1081 (9th Cir. 2002). On the other hand, in *Balla*,

the court held that the plaintiff was a limited-purpose public figure because the plaintiff's role as

representative of a prospective developer seeking to obtain a public contract, was not broad

enough to garner the public attention necessary to qualify as a public figure for all purposes. 59

1 | Cal. App. 5th at 676.

2 |       Counter-Defendants allege that Mr. Tapia, as the lead vocalist for the band "Los Yes

3 | Yes," is an all-purpose public figure, but at the very least, a limited-purpose public figure because

4 | Mr. Tapia "voluntarily injected himself into the public discourse over the Band and its dispute

5 | with him when he formed his own copycat band to distribute" the Work.  (Doc. 29 at 18.)  Mr.

6 | Tapia fails to address Counter-Defendants' argument regarding the all-purpose figure

7 | classification, but contends that he is not a limited-purpose public figure because he attempted to

8 | handle the matter privately.  (Doc. 38 at 22.)  However, Mr. Tapia is a well-known artist in

9 | Mexico, both through the "copycat" "Grupo Ensamble," and the band "Los Yes Yes."  (Doc. 29-4

10 | at 5.)  Mr. Tapia's version of the Work amassed 95 million streams on YouTube before being

11 | removed and 86 million streams on Spotify between April 2020 and the filing of the lawsuit.

12 | (Doc. 29-4 at 4–5.)  Mr. Tapia's band "Los Yes Yes" had 454,324 monthly listeners on Spotify as

13 | of November 4, 2021.  (Doc. 60-5 at 6.)  These listener numbers, like the subscriber and

14 | download numbers in *Manzari*, support finding that Mr. Tapia has amassed great public attention

15 | in Mexico.  Furthermore, Mr. Tapia conducted radio interviews in his role as lead vocalist for

16 | "Los Yes Yes."  (Doc. 60-5 at 8.)  As with the magazine interview in *Solano*, Mr. Tapia's media

17 | presence demonstrates his popularity and notoriety.  Accordingly, Mr. Tapia is public figure for

18 | purposes of the Court's analysis.[4]

19 |           ii.    Reasonable Probability of Prevailing on the Merits

20 |       To prevail, Mr. Tapia will eventually need to present clear and convincing evidence that

21 | Counter-Defendants' Facebook video and comments contained a defamatory implication, and that

22 | Counter-Defendants acted with "actual malice" when they posted the video and comments.  *See*

23 | *Kaelin v. Globe Comm. Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998) ("A public figure in a

24 | defamation case cannot recover unless he proves by clear and convincing evidence that the

25 | defendant published the defamatory statement with actual malice, i.e., with knowledge that it was

26 | false or with reckless disregard of whether it was false or not.").  However, at the anti-SLAPP

27 |

28 | [4] Based upon the nature of the statements at issue and the nature of the controversy, the Court finds it unnecessary to determine whether Mr. Tapia is an all-purpose or a limited-purpose public figure.

1    stage, "[a] public figure who sues for defamation must establish a *probability* that he or she can

2    produce such clear and convincing evidence." *Overstock.com, Inc. v. Gradient Analytics, Inc.*,

3    151 Cal. App. 4th 688, 700 (2007) (emphasis added); *see also Burrill v. Nair*, 217 Cal. App. 4th

4    357, 390 (2013) ("[W]e must determine [at the anti-SLAPP stage] whether [the plaintiff] has

5    made a sufficient prima facie showing of facts to sustain her burden of demonstrating a high

6    probability that [the defendant] published the defamatory statements with knowledge of their

7    falsity or while entertaining serious doubts as to their truth.").

8        At this juncture in the proceedings, Mr. Tapia is required to prove only that the claim has

9    minimal merit. *Overstock.com*, 151 Cal. App. 4th at 700. Counter-Defendants argue that these

10   statements were "general statements of opinion about Mr. Tapia's personal character." (Doc. 40

11   at 9.) Though Counter-Defendants' statements did not affirmatively state that Mr. Tapia was

12   infringing on Counter-Defendants' copyright, it is not difficult to divine as such from the

13   implications made in the statements. Counter-Defendants' Facebook comments call Mr. Tapia a

14   "rat," "thief," and "robber" who "took advantage and started committing piracy," took a "copy"

15   of the Work, and was "unfairly charging Ensamble's royalties." (Doc. 58-6 at 2–4.)[5] Further,

16   there are repeated references to court proceedings and documents "proving" that Mr. Tapia was

17   stealing both the music and royalties. (*Id.*) Thus, Mr. Tapia has presented sufficient evidence to

18   carry his burden of showing a reasonable probability of success on the merits regarding the

19   defamatory nature of the statements.

20       The Court now turns to the malice prong of the defamation analysis for a public figure.

21   The Supreme Court has provided a framework to assess whether a public figure may proceed with

22   a defamation claim. In *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991), the Court

23   explained that "actual malice" presents a question of fact: "The constitutional question we must

24   consider here is whether . . . the evidence suffices to show that respondents acted with the

25   requisite knowledge of falsity or reckless disregard as to truth or falsity." *Id.* at 513. Where a

26   statement "reasonably implies false and defamatory facts regarding public figures or officials,

27   _____

     [5] Mr. Tapia references the video posted on Facebook to support these allegations, (Doc. 38 at 22),
28   however the video is in Spanish and no transcript or certified translation of the video was filed with the
     Court. Thus, the Court's analysis is focused solely on the written comments.

1  those individuals must show that such statements were made with knowledge of their false

2  implications or with reckless disregard of their truth." *Milkovich v. Lorain Journal Co.*, 497 U.S.

3  1, 30 (1990). "[R]eckless conduct is not measured by whether a reasonably prudent man would

4  have published, or would have investigated before publishing. There must be sufficient evidence

5  to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his

6  publication." *Time, Inc. v. Pape*, 401 U.S. 279, 291–92 (1971). This standard ensures that the

7  individual making the statement is not held liable for unintentional misstatements or implications,

8  which public figures later claim are defamatory. *Id.*

9      The statements at issue rest on the "reckless disregard" prong of actual malice.

10  Recognizing that Mr. Tapia must only demonstrate "minimal merit" to withstand initial dismissal

11  under the anti-SLAPP statute, the Court holds that Mr. Tapia has raised sufficient factual

12  questions for a jury to conclude that Counter-Defendants acted with reckless disregard for the

13  defamatory implication in the Facebook video and comments. Mr Tapia alleges that he attempted

14  to handle the matter privately by emailing Counter-Defendants to settle the dispute, but that

15  Counter-Defendants' statements were intended to malign Mr. Tapia and bully him into

16  submission. (Doc. 38 at 22–23.) The attempts to communicate by Mr. Tapia, paired with the

17  ongoing litigation, demonstrates that a potential question of ownership and royalty rights existed.

18  (*Id.*) Thus, doubts existed regarding the veracity of Mr. Tapia's "thefts" and "piracy" of the

19  Work, such that Mr. Tapia has met the threshold minimal merit requirement to avoid outright

20  dismissal of the claim. Therefore, Counter-Defendants' motion to strike the defamation claim is

21  **DENIED**.

22          b.    *Intentional Interference with Contractual Relations*

23      Under California law, a stranger to a contract may be liable in tort for intentionally

24  interfering with the performance of the contract. *Pacific Gas & Electric Co. v. Bear Stearns &*

25  *Co.*, 50 Cal. 3d 1118, 1126 (1990). To state a cause of action for intentional interference with

26  contractual relations, a plaintiff must plead "(1) the existence of a valid contract between the

27  plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's

28  intentional acts designed to induce a breach or disruption of the contractual relationship; (4)

15

1   actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel*

2   *Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (quoting *Reeves v. Hanlon*, 33 Cal.

3   4th 1140, 1148 (2004)).

4          Mr. Tapia alleges intentional interference with contractual relations against Mr. Carbajal

5   and Mr. Olvera, then in another count, against Hyphy and Mr. Martinez.  (Doc. 25, ¶¶ 32–49.)

6   Mr. Tapia alleges that Mr. Carbajal and Mr. Olvera "along with Hyphy, made an erroneous claim

7   of copyright for the Work hindering Mr. Tapia from performing on his agreements."  (*Id.*, ¶ 37.)

8   Against Hyphy and Mr. Martinez, Mr. Tapia alleges that a claim was made to Spotify that Mr.

9   Tapia "was 'pirating' or infringing on the copyright of the Work, which led to Spotify removing

10  Mr. Tapia's catalog consisting of various sound recordings songs unrelated to the Work."  (*Id.*, ¶

11  44.)  Because both counts are predicated on Hyphy's DMCA takedown notice, the Court will

12  address both counts together.  (*See* Doc. 38 at 17 (Mr. Tapia addressing that both counts are

13  predicated on the action to takedown the music, which occurred through the filing of the

14  takedown notice)).  Counter-Defendants argue that Mr. Tapia cannot show a probability that it

15  will prevail on the merits of its claim because Mr. Tapia's state law claims for intentional

16  interference with contractual relations are preempted by the DMCA.  (Doc. 29 at 19.)

17         The Court agrees that Mr. Tapia's state law claims are preempted by federal law.

18  Preemption occurs "when compliance with both state and federal [laws] is a physical

19  impossibility or when state law stands as an obstacle to the accomplishment and execution of the

20  full purposes and objectives of Congress."  *Hollsborough County Fla. v. Automated Med. Labs.*

21  *Inc.*, 471 U.S. 707, 713 (1985).  The Ninth Circuit employs a two-part test to determine whether

22  the Copyright Act preempts a particular state law claim—preemption occurs if: (1) the work at

23  issue comes within the subject matter of copyright; and (2) the rights that the plaintiff asserts

24  under state law are equivalent to those protected by the Act.  *See Kodadek v. MTV Networks, Inc.*,

25  152 F.3d 1209, 1212 (9th Cir. 1998).  Courts in the Ninth Circuit have held that 17 U.S.C.

26  § 512(f) of the DMCA preempts state law claims based on DMCA takedown notifications

27  because the rights asserted under state law are wholly encompassed by the Copyright Act.  *See*

28  *e.g.*, *Online Policy Group v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004); *Lenz*, 2008 WL

16

962102, at \*4; *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696, 2011 WL

2690437, at \*4 (N.D. Cal. 2011); *Complex Media, Inc.*, 2019 WL 2896117, at \*5.  Applying the

doctrine of conflict preemption, one court found that:

> Even if a copyright holder does not intend to cause anything other than the removal
> of allegedly infringing material, compliance with the DMCA's procedures
> nonetheless may result in disruption of a contractual relationship: by sending a letter,
> the copyright holder can effectuate the disruption of ISP service to clients. If
> adherence to the DMCA's provisions simultaneously subjects the copyright holder
> to state tort law liability, there is an irreconcilable conflict between state and federal
> law . . . . In section 512(f), Congress provides an express remedy for misuse of the
> DMCA's safe harbor provisions.

*Online Policy Group*, 337 F. Supp. 2d at 1205–06.  Thus, Mr. Tapia's intentional interference

claim falls within the scope of the Copyright Act and is preempted.  Accordingly, the Court

**GRANTS** Counter-Defendant's motion to strike Mr. Tapia's state law claims and **STRIKES** Mr.

Tapia's claims for intentional interference with contractual relations.

c.    *Breach of Contract*

To plead a breach of contract, a plaintiff must plead (1) the existence of a contract, (2)

plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting

damage to the plaintiff.  *Reinhardt v. Gemini Motor Transport*, 879 F. Supp. 2d 1138, 1143 (E.D.

Cal. 2012).  Mr. Tapia alleges that Mr. Carbajal and Mr. Olvera breached their contracts with

DDMW "when they conspired with Hyphy and Mr. Martinez to exploit the rights of the Work

and improperly claim ownership to the sound recording copyrights of the Work."  (Doc. 25, ¶ 52.)

Counter-Defendants argue that the breach of contract claim is preempted "because the referenced

'agreements' did not create rights in Mr. Tapia related to the Work that are qualitatively different

from the rights Hyphy is claiming to possess in the Work via Copyright law."  (Doc. 29 at 20.)

i.    Preemption

"[C]laims are not preempted by the federal copyright statute so long as they contain

elements, such as the invasion of personal rights . . . that are different in kind from copyright

infringement."  *Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129, 1149 (E.D. Cal. 1999).  "When

determining whether a breach of contract claim is preempted by copyright, the Court must look to

17

the rights actually created by the contract, and then analyze whether any of those rights differ

from the prohibition of unauthorized reproduction, performance, distribution, or display of work

protected under copyright law." *Rumble, Inc. v. Daily Mail & General Trust PLC*, 459 F. Supp.

3d 1294, 1299 (C.D. Cal. 2020). "Contract claims generally survive [copyright] preemption

because they require proof of [] an extra element." *Montz v. Pilgrim Films & TV, Inc.*, 649 F.3d

975, 980 (9th Cir. 2011). Contracts addressing rights to payment, rights to royalties, or any other

independent covenant, are qualitatively different than copyright actions and are not preempted by

federal copyright law. *See Kabehie v. Zoland*, 102 Cal. App. 4th 513, 528 (2002). However, if

the contract does no more than promise not to infringe on copyrighted works, then claims

stemming from breach are preempted. *Rumble, Inc.*, 459 F. Supp. 3d at 1299.

Counter-Defendants argue that the alleged contracts between Mr. Carbajal and Mr. Olvera

with DDMW "did nothing more than purportedly give Mr. Tapia a claim for royalties that are

granted by Copyright law, and therefore created no new, and qualitatively different right." (Doc.

29 at 20.) Mr. Carbajal's contract provided that DDMW would receive Mr. Carbajal's royalties,

withdraw commission and payment for services rendered, then distribute any remaining royalties

to Mr. Carbajal. (Doc. 58-2 at 2–7.) Mr. Olvera's contract assigned exclusive rights in the Work

to DDMW and provided that DDMW would receive 70% of all revenue collected through all

digital platforms and YouTube. (Doc. 58-3 at 2–4.) Both contracts addressed rights to royalties

and other miscellaneous payments, which are qualitatively different elements than those

underlying pure copyright actions under 17 U.S.C. § 512(f). *See Kabehie*, 102 Cal. App. 4th at

528; *Rumble, Inc.*, 459 F. Supp. 3d 1299. Therefore, the breach of contract claim is not

preempted by the Copyright Act.

ii.    Reasonable Probability of Prevailing on the Merits

To demonstrate a probability of prevailing on the merits, Mr. Tapia must demonstrate that

the complaint is "supported by a sufficient prima facie showing of facts to sustain a favorable

judgment if the evidence submitted by the plaintiff is credited." *Wilson*, 28 Cal. 4th at 821. In

addition to the contracts themselves, Mr. Tapia submitted various text messages between Mr.

Tapia and both Mr. Carbajal and Mr. Olvera referencing the relationship between the parties and

the royalty arrangements.  (Docs. 59-10 at 2–9; 59-11 at 2–3; 59-12 at 2–10; 59-13 at 2–6.)

Though Counter-Defendants allege that the contracts are forgeries, the Court must accept as true

all evidence favorable to Mr. Tapia and assess Counter-Defendants' evidence only to determine if

it defeats Mr. Tapia's submission as a matter of law.  *See Overstock.com, Inc.*, 151 Cal. App. 4th

at 699–700.  Because Counter-Defendants do not provide evidence defeating the validity of the

contracts, Mr. Tapia has demonstrated facts sufficient to show the existence of the contracts.

Furthermore, Mr. Tapia has shown that Mr. Carbajal and Mr. Olvera published the Work with

Hyphy, which would constitute a breach of Mr. Carbajal and Mr. Olvera's contracts, resulting in

damage to Mr. Tapia.  (Doc. 25, ¶¶ 50–55.)  Therefore, Mr. Tapia has demonstrated a reasonable

probability of prevailing on the merits and Counter-Defendants' motion to strike the breach of

contract claim is **DENIED**.

#### d.    *Fraudulent Misrepresentation*

To state a claim for fraudulent misrepresentation, a plaintiff must plead:"(1) the defendant

represented to the plaintiff that an important fact was true; (2) that representation was false; (3)

the defendant knew that the representation was false when the defendant made it, or the defendant

made the representation recklessly and without regard for its truth; (4) the defendant intended that

the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6)

the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a

substantial factor in causing that harm to the plaintiff."  *Broge v. ALN Int'l, Inc.*, No.

17-cv-07131-BLF, 2018 WL 2197524, at *4 (N.D. Cal. 2018) (quoting *Graham v. Bank of Am.,

N.A.*, 226 Cal. App. 4th 594, 605–06 (2014)).  Because a claim for fraudulent misrepresentation is

subject to the higher pleading standard under Rule 9(b), a plaintiff must plead details regarding

the "who, what, when, where, and how" of the alleged misconduct.  *Vess v. Ciba-Geigy Corp.

USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Mr. Tapia alleges two counts of fraudulent

misrepresentation—one against Hyphy and Mr. Martinez, and one against Mr. Carbajal and Mr.

Olvera.  Because the factual allegations differ under each count, the Court will address each in

turn.

///

i.    Count One: Hyphy and Mr. Martinez

Mr. Tapia alleges that Hyphy and Mr. Martinez fraudulently misrepresented to Spotify that Mr. Tapia infringed on their copyright of the Work, in addition to other works by "Grupo Ensamble" and Mr. Tapia's other band "Los Yes Yes." (Doc. 25, ¶¶ 56–61.) Hyphy and Mr. Martinez contend that Mr. Tapia has no reasonable possibility of prevailing on this claim, because the purported fraudulent misrepresentation was made to Spotify, not Mr. Tapia himself. (Doc. 29 at 21.) The Court agrees. Even accepting as true that Hyphy made representations to Spotify regarding music that Hyphy knew it had no rights in, these representations were not made to Mr. Tapia as is required under California's fraudulent misrepresentation cause of action. *See Broge*, 2018 WL 2197524, at *4 (explaining that the representation must be made to the plaintiff). (*See* Doc. 38 at 24.) Accordingly, the Court **GRANTS** Counter-Defendant's motion to strike Mr. Tapia's fraudulent misrepresentation claim against Hyphy and Mr. Martinez and **STRIKES** Mr. Tapia's Mr. Tapia's fraudulent misrepresentation claim against Hyphy and Mr. Martinez. Because Mr. Tapia may be able to remedy this defect, the motion to strike this claim against Hyphy and Mr. Martinez is granted with leave to amend.

ii.    Count Two: Mr. Carbajal and Mr. Olvera

Mr. Tapia alleges that Mr. Carbajal and Mr. Olvera represented to Mr. Tapia, Hyphy, and Mr. Martinez that "they individually had ownership related to the Work." (Doc. 25, ¶ 63.) Mr. Tapia avers that "at no time did Counter-Defendants Olvera and Carbajal have valid authorization or permission to license or exploit the rights of the Work." (*Id.*, ¶ 64.) Mr. Olvera and Mr. Carbajal contend that Mr. Tapia's cannot establish a probability of prevailing on this claim "because it is vague as to what specific misrepresentations Olvera and Carbajal allegedly made, and is silent on when, where and how such statements were allegedly made." (Doc. 29 at 21.) The Court disagrees. Mr. Tapia has provided a sufficient prima facie showing of facts to sustain favorable judgment pertaining to the fraudulent misrepresentation claim. *See Wilson*, 28 Cal. 4th at 821. Mr. Carbajal and Mr. Olvera's contracts with Mr. Tapia indicate that Mr. Carbajal and Mr. Olvera had ownership rights in the Work that could be transferred to Mr. Tapia. (Docs. 58-2 at 2–7; 58-3 at 2–4.) Furthermore, the text messages indicate that the contracts with Mr. Tapia

20

1    were for the purpose of maximizing the financial potential of the Work.  (Docs. 59-10 at 2–9; 59-

2    11 at 2–3; 59-12 at 2–10; 59-13 at 2–6.)  However, Mr. Tapia provided documentation that Ms.

3    Posadas was "the true owner of the principal version of the sound recording for the Work," (*see*

4    Doc. 59-6 at 2–4), demonstrating that Mr. Carbajal and Mr. Olvera fraudulently misrepresented

5    their ownership rights.  (Doc. 25, ¶ 64.)  Thus, Mr. Tapia has established a probability of

6    prevailing on the fraudulent misrepresentation claim against Mr. Carbajal and Mr. Olvera.

7    Accordingly, Counter-Defendants' motion to strike the fraudulent misrepresentation claim against

8    Mr. Carbajal and Mr. Olvera is **DENIED**.

9                           e.    *Invalidation of Copyright Registration*

10                Before addressing the declaratory judgment of the invalidation of the copyright

11    registration, the Court must first consider whether it has jurisdiction to address the claim.  *See*

12    *Rhoades v. Avon Pros., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) ("When presented with a claim

13    for a declaratory judgment, . . . federal courts must take care to ensure the presence of an actual

14    case or controversy, such that the judgment does not become an unconstitutional advisory

15    opinion.").  The Declaratory Judgment Act permits a court to "declare the rights and other legal

16    relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201(a).  "The 'actual

17    controversy' requirement of the Act is the same as the 'case or controversy' requirement of

18    Article III of the United States Constitution."  *Societe de Conditionnement en Aluminun v. Hunter*

19    *Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981).  The court "must first inquire whether there is an

20    actual case or controversy within its jurisdiction."  *Principal Life Ins. Co. v. Robinson*, 394 F.3d

21    665, 669 (9th Cir. 2005).  "Second, if the court finds that an actual case or controversy exists, the

22    court must decide whether to exercise its jurisdiction."  *Id.*

23                To present a justiciable case or controversy, a plaintiff must allege facts that, "under all

24    the circumstances, show that there is a substantial controversy, between parties having adverse

25    legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory

26    judgment."  *Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th

27    Cir. 2014).  For a declaratory judgment claim involving the validity or infringement of a

28    copyright, an actual controversy exists if the defendants' actions have caused the plaintiff to

1    harbor "a real and reasonable apprehension that [it] will be subject to liability if [it] continues"

2    the allegedly infringing conduct.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 862 F.2d

3    1542, 1555–56 (9th Cir. 1989).

4         In July 2020, Counter-Defendants sent Spotify a DMCA takedown notice, accusing Mr.

5    Tapia of copyright infringement.  (Doc. 17, ¶ 12.)  Mr. Tapia was notified in February 2021 by

6    Spotify that Counter-Defendants had issued a takedown notice, then immediately contacted

7    Counter-Defendants to explain why Mr. Tapia believed he had ownership of the Work.  (Docs. 38

8    at 9; 38-14 at 2; 59-15 at 2–4.)  The notification from Spotify indicated that the content from

9    "Grupo Ensamble" and "Los Yes Yes" "infringes on intellectual property rights" and that the

10   "content has been taken down."  (Doc. 38-14 at 2.)  The Court concludes that this removal of the

11   content and notification that Mr. Tapia was infringing on Hyphy's copyright sufficiently alleges

12   the requisite "real and reasonable apprehension," and thus an actual controversy, as to

13   Counter-Defendants.  *See Digi Fama LLC v. SnapNHD, LLC*, No. CV 20-11792-RSWL-JEMx,

14   2021 WL 8773299, at *5 (C.D. Cal. Sept. 3, 2021) (holding that a notification that the plaintiff

15   was infringing on a copyright is sufficient to establish an actual controversy).

16        Having determined that an actual controversy exists between Mr. Tapia and

17   Counter-Defendants, the Court must next determine whether maintaining jurisdiction is

18   appropriate.  *Principal Life Ins. Co.*, 394 F.3d at 669.  In making this determination, the Court

19   must consider a variety of factors, including:

20        whether retaining jurisdiction would: (1) involve the needless determination of
          state law issues; (2) encourage the filing of declaratory actions as a means of
21        forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the
          controversy in a single proceeding; (5) serve a useful purpose in clarifying the
22        legal relations at issue; (6) permit one party to obtain an unjust res judicata
          advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the
23        convenience of the parties.

24   *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011).  At a minimum, factors one,

25   two, three, five, and seven weigh in favor of retaining jurisdiction.  The Court determines that the

26   exercise of jurisdiction over the declaratory relief claim against Counter-Defendants is

27   appropriate.

28        Counter-Defendants argue that the invalidation of the copyright registration is preempted

1    because the action "seeks declaratory relief on the basis of breached contractual rights that Mr.

2    Tapia claims to possess." (Doc. 29 at 22.) Because the Court has previously established that the

3    breach of contract claim is not preempted, the declaratory relief similarly cannot be preempted.

4    Counter-Defendants also argue that if the claim is not preempted, Mr. Tapia cannot establish a

5    probability of prevailing on his claim because he has no rights in the Work. As discussed in the

6    breach of contract and fraudulent misrepresentation discussions above, Mr. Tapia has established

7    a probability of prevailing regarding his rights in the Work through his contracts with Mr. Olvera

8    and Mr. Carbajal and the communications between the parties. (*See* Docs. 58-2 at 2–7; 58-3 at

9    2–4; 59-10 at 2–9; 59-11 at 2–3; 59-12 at 2–10; 59-13 at 2–6.) Therefore, Mr. Tapia has similarly

10    established a probability of prevailing on the invalidation of the copyright registration.

11    Accordingly, Counter-Defendants' motion to strike the declaratory relief claim is **DENIED**.

12                  f.      *Intentional Interference with Prospective Economic Advantage*

13           Under California law, to state a cause of action for intentional interference with

14    prospective economic advantage, a plaintiff must plead "(1) an economic relationship between the

15    plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2)

16    the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant

17    designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

18    harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v.

19    Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). The California Supreme Court noted that

20    "while intentionally interfering with an existing contract is a wrong in and of itself, intentionally

21    interfering with a plaintiff's prospective economic advantage is not. Therefore, to establish a

22    claim for interference with prospective economic advantage, a plaintiff must plead that the

23    defendant engaged in an independently wrongful act." *Id.* at 1158. Furthermore, "an act is

24    independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional,

25    statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159.

26           Mr. Tapia alleges that Mr. Martinez and Hyphy intentionally interfered with his

27    prospective economic advantage by submitting an overbroad claim of copyright infringement for

28    sound recordings. (Doc. 25, ¶ 81.) Mr. Tapia avers that Mr. Martinez and Hyphy intentionally

1    acted to harm Mr. Tapia through the removal of music other than the Work, and from a band

2    other than "Grupo Ensamble." (*Id.*, ¶¶ 79–84.) Furthermore, Mr. Tapia alleges that Mr. Martinez

3    and Hyphy's actions "led Spotify to issue Mr. Tapia an unjustified 'strike' on his Spotify profile."

4    (*Id.*, ¶ 82.) Mr. Martinez and Hyphy contend that even though this claim contains an intent

5    element, this claim is still preempted by the Copyright Act. (Doc. 29 at 22.)

6        Though a claim for intentional interference with prospective economic advantage requires

7    a showing of knowledge or intent on the part of the defendant that is not present in the federal

8    copyright law, that is not enough to preclude preemption. *See Media.net Advertising FZ-LLC v.*

9    *NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1072 (N.D. Cal. 2016) (holding that when the intentional

10   interference claim is predicated on the use of copyrighted work, the claim is preempted). The

11   intent element is not "qualitatively different" than the elements of a copyright claim, and as such,

12   "these additional requirements do not bring such a claim outside the scope of Copyright Act

13   preemption." *Wilder v. CBS Corp.*, No. 2:12-CV-8961-SVW-RZ, 2016 WL 693070, at *8 (C.D.

14   Cal. Feb. 13, 2016); *see also Crafty Productions, Inc. v. Michaels Companies, Inc.*, 389 F. Supp.

15   3d 876, 886 (S.D. Cal. 2019) (explaining that the intent element alone does not foreclose

16   preemption). "[F]ederal copyright laws already protect the exclusive right of distribution."

17   *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004). "[W]hether this

18   claim is preempted ultimately turns on whether the gravamen of Plaintiff's claim is an alleged

19   violation of Plaintiff's exclusive rights under the Copyright Act." *220 Laboratories, Inc. v.*

20   *Babaii*, No. CV 08-6125 PSG, 2008 WL 5158863, at *8 (C.D. Cal. Dec. 8, 2008).

21       Mr. Tapia's intentional interference with prospective economic advantage claim against

22   Mr. Martinez and Hyphy is wholly predicated on what Mr. Tapia alleges is an "overbroad claim

23   of copyright infringement." (Doc. 25, ¶ 81.) Though Mr. Tapia contends that Mr. Martinez and

24   Hyphy's "actions to takedown music that does not clearly belong to them" constitutes behavior

25   outside the scope of the Copyright Act, (Doc. 38 at 19), Mr. Tapia presents an inexact

26   interpretation of Ninth Circuit authority. Because the gravamen of Mr. Tapia's intentional

27   interference with prospective economic advantage claim is a violation of Mr. Tapia's alleged

28   copyrights, the Copyright Act is the exclusive avenue to pursue protection. *See Media.net*

1    *Advertising FZ-LLC*, 156 F. Supp. 3d at 1072.  Therefore, Mr. Tapia's intentional interference

2    with prospective economic advantage claim is preempted by the Copyright Act.  Accordingly, the

3    Court **GRANTS** Counter-Defendant's motion to strike and **STRIKES** Mr. Tapia's intentional

4    interference with prospective economic advantage claim against Mr. Martinez and Hyphy.

5               g.    *Negligent Interference with Prospective Economic Advantage*

6              Under California law, a claim for "negligent interference with prospective economic

7    advantage is established where a plaintiff demonstrates that (1) an economic relationship existed

8    between the plaintiff and a third party which contained a reasonably probable future economic

9    benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and

10   was aware or should have been aware that if it did not act with due care its actions would interfere

11   with this relationship and cause plaintiff to lose in whole or in part the probable future economic

12   benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence

13   caused damage to plaintiff in that the relationship was actually interfered with or disrupted and

14   plaintiff lost in whole or in part the economic benefits or advantage reasonable expected." *R*

15   *Power Biofuels, LLC v. Chemex, LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *14 (N.D.

16   Cal. Nov. 11, 2016).

17             Mr. Tapia alleges that Mr. Martinez and Hyphy had knowledge of Mr. Tapia's existing

18   relationship with Spotify and knew or should have known that submitting an overbroad claim of

19   copyright infringement would interfere with Mr. Tapia's prospective economic advantage.  (Doc.

20   25, ¶¶ 85–88.)  Mr. Tapia alleges that because of Mr. Martinez and Hyphy's negligence, Mr.

21   Tapia received "an unjustified 'strike' on his Spotify profile" and Spotify removed Mr. Tapia's

22   work under the "Grupo Ensamble" and "Los Yes Yes" band pages.  (*Id.*)  Mr. Martinez and

23   Hyphy contend that any alleged interference with Mr. Tapia's copyrights is preempted by the

24   Copyright Act, and thus the state law claim of negligent interference with prospective economic

25   advantage is preempted.  (Doc. 29 at 23.)

26             The only difference between an intentional interference claim and a negligent interference

27   with prospective economic advantage claim relates to the defendant's intent; rather than

28   intentionally disrupting the relationship, the defendant must act negligently to disrupt the

1   relationship. *See Crown Imports, LLC v. Superior Court*, 223 Cal. App. 4th 1395, 1404 n.10

2   (2014). Thus, the negligence element, instead of the intent element, does not remove this claim

3   from the Copyright Act's sphere unless the gravamen of the allegations is outside the scope of

4   federal law. *See Kabehie*, 102 Cal. App. 4th at 530 (holding that when the copyright allegations

5   permeate both the intentional interference and negligent interference with prospective economic

6   advantage claims, both are preempted). Because Mr. Tapia reasserts that Mr. Martinez and

7   Hyphy were negligent due to the overbroad claims of copyright infringement, Mr. Tapia's

8   negligent interference claim is preempted by the Copyright Act. Therefore, the Court **GRANTS**

9   Counter-Defendant's motion to strike and **STRIKES** Mr. Tapia's negligent interference with

10  prospective economic advantage claim against Mr. Martinez and Hyphy.

11         h.      *Conversion*

12         To plead conversion, a plaintiff must demonstrate "(1) plaintiffs' ownership or right to

13  possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful

14  act or disposition of plaintiffs' property rights; and (3) damages." *Tyrone Pac. Intern., Inc. v. MV*

15  *Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981). "Because conversion is a strict liability claim, a

16  defendant's 'good faith, lack of knowledge, motive, or intent are not relevant' in establishing a

17  claim for conversion." *Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*, 161 F. Supp. 3d

18  910, 916 (E.D. Cal. 2016). Mr. Tapia alleges that Hyphy and Mr. Martinez wrongfully collected

19  and profited from music that did not belong to them and sought damages for the royalty's

20  wrongfully obtained by Hyphy and Mr. Martinez. (Doc. 25, ¶¶ 89–94.) Hyphy and Mr. Martinez

21  contend that Mr. Tapia's conversion claim is preempted by the Copyright Act. (Doc. 29 at 23.)

22         "Generally, when the tort of conversion relates to interference with tangible rather than

23  intangible property, it should be held immune from preemption." *Weller Const., Inc. v. Memorial*

24  *Healthcare Services*, No. SACV 14-01115-CJC, 2014 WL 5089422, at *3 (C.D. Cal. Oct. 8,

25  2014). "Whereas an action for conversion will lie only for wrongful possession of the tangible

26  embodiment of a work, 'a copyright action must be brought for the wrongful use of the intangible

27  artistic property contained therein.'" *Id.* (quoting *AmerUS Life Ins. Co. v. Bank of America*, 143

28  Cal. App. 4th 631, 642 (2006)). "Furthermore, when a plaintiff's claim only seeks damages from

26

1   a defendant's reproduction of a work 'and not the actual return of a physical piece of

2   property—the claim is preempted.'" *Id.* (quoting *Firoozye v. Earthlink Network*, 153 F. Supp. 2d

3   1115, 1130 (N.D. Cal. 2001)).

4          Mr. Tapia does not seek the return of a physical piece of property, but the royalties

5   accrued on what Mr. Tapia claims was an infringed copyright.  (Doc. 25, ¶¶ 89–94.)  Such a

6   claim only seeks damages for the infringement, not return of wrongfully possessed tangible work.

7   *See Weller Const. Inc.*, 2014 WL 5089422, at \*3.  Damages for infringement are exclusively

8   governed by the Copyright Act.  *See Aagard*, 344 F. Supp. 2d at 1219.  Thus, Mr. Tapia's state

9   law conversion claim is preempted by federal copyright laws.  Therefore, the Court **GRANTS**

10   Counter-Defendant's motion to strike and **STRIKES** Mr. Tapia's state law conversion claim

11   against Mr. Martinez and Hyphy.

12                  i.     *Theft by False Pretenses*

13          Under California law, theft by false pretenses requires three elements "(1) property was

14   stolen or obtained in a manner constituting theft, (2) the defendant knew the property was so

15   stolen or obtained, and (3) the defendant received or had possession of the stolen property."

16   *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019).  Mr. Tapia alleges that Hyphy and Mr.

17   Martinez wrongfully collected and profited from copyright infringement, which constitutes theft

18   by false pretenses.  (Doc. 25, ¶¶ 95–100.)  Hyphy and Mr. Martinez argue that Mr. Tapia's theft

19   by false pretenses claim is essentially identical to the conversion claim and should also be

20   preempted by the Copyright Act.  (Doc. 29 at 24.)

21          State law claims are preempted when the subject matter falls under the scope of copyright

22   protection and the right asserted under state law is equivalent to an exclusive right of the

23   Copyright Act.  *See Kabehie*, 102. Cal. App. 4th at 520.  State law claims seeking recovery of

24   money received on the basis of the copyright infringement are preempted because these causes of

25   action are not qualitatively different from a copyright infringement action.  *See id.* at 530

26   (explaining that a cause of action intended to recover proceeds from unauthorized reproduction

27   and distribution of material is preempted by the Copyright Act).  Because Mr. Tapia is attempting

28   to use the theft by false pretenses claim to recover royalties, and damages for copyright

1    infringement exclusively fall under the scope of the Copyright Act, this claim is preempted.

2    Thus, the Court **GRANTS** Counter-Defendant's motion to strike and **STRIKES** Mr. Tapia's state

3    law theft by false pretenses claim against Mr. Martinez and Hyphy.

4                    j.        *Violation of California Business & Professions Code § 17200*

5            The UCL prohibits any unlawful, unfair, or fraudulent business practice.  Cal. Bus. &

6    Prof. Code §17200.  "By proscribing 'any unlawful' business practice, § 17200 borrows

7    violations of other laws and treats them as unlawful practices that the unfair competition law

8    makes independently actionable."  *Cel-Tech. Comm., Inc. v. Los Angeles Cellular Tele. Co.*, 20

9    Cal. 4th 163, 180 (1999).  "Because the statute is written in the disjunctive, it is violated where a

10   defendant's acts or practices violates any of the foregoing prongs."  *Davis v. HSBC Bank Nev.,*

11   *N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).  Mr. Tapia alleges that he has been harmed by

12   Counter-Defendants defamation, fraudulent misrepresentations, invalidly claimed '529

13   Registration, intentional and negligent interference, conversion, and theft by false pretenses.

14   (Doc. 25, ¶¶ 101–105.)  Counter-Defendants argue that any violation under § 17200 based on a

15   preempted claim is similarly preempted, and Mr. Tapia cannot demonstrate a probability to

16   prevail on any remaining claims.  (Doc. 29 at 24.)

17           A determination of whether the Copyright Act preempts a UCL claim "requires analysis

18   of each theory of unfair competition to determine whether it contains the necessary qualitatively

19   different extra element distinguishing it from copyright . . . protection."  *Summit Mach. Tool Mfg.*

20   *Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993).  "To the extent that Plaintiff

21   brings this [UCL] claim based on conduct involving subject matter covered by the Copyright Act,

22   the claim is preempted if it implicates rights contained in that Act."  *Sleep Sci. Partners v.*

23   *Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *10 (N.D. Cal. May 10, 2010).  If the

24   plaintiff does not include any additional allegations or facts in the UCL claim that are not asserted

25   in the prior claims, any portion of the UCL claim predicated on those preempted claims is

26   similarly preempted.  *See Young Money Entm't, LLC v. Digerati Holdings, LLC*, No.

27   2:12-cv-07663-ODW, 2012 WL 5571209, at *9 (C.D. Cal. Nov. 15, 2012) (finding Copyright Act

28   preempted UCL claim where plaintiff did not allege additional facts but merely incorporated facts

1  regarding copyright infringement).

2        Of Mr. Tapia's allegations underlying the UCL claim, only the defamation and fraudulent

3  misrepresentation claims are not preempted by the Copyright Act.  All other claims underlying

4  the UCL claim are preempted.  "Where, as here, 'the improper business act complained of is

5  based on copyright infringement, a UCL claim is 'properly dismissed because it is preempted.'"

6  *Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2015 WL 2412357, at *5 (N.D. Cal.

7  May 20, 2015) (quoting *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir.

8  2008)).  Thus, to the extent Mr. Tapia's UCL claim is based on the preempted claims, the Court

9  **GRANTS** Counter-Defendant's motion to strike and **STRIKES** Mr. Tapia's UCL claims

10  predicated on the preempted claims.  Regarding the portions of the UCL claim predicated on the

11  defamation and fraudulent misrepresentation claims, the Court finds that Mr. Tapia has

12  demonstrated a probability of prevailing to withstand dismissal under the anti-SLAPP motion to

13  strike.  Mr. Tapia sufficiently demonstrated that both claims are supported by a prima facie

14  showing of facts to sustain a favorable judgment, *see Wilson*, 28 Cal. 4th at 821, and re-alleged

15  and incorporated by reference the requisite facts for these claims in the UCL claim.  (Doc. 25,

16  ¶ 101.)  Thus, to the extent Mr. Tapia's UCL claim is based on the defamation and fraudulent

17  misrepresentation claims, the Court **DENIES** Counter-Defendant's motion to strike.

18  **B.**    **Motion to Dismiss**

19        Following the Court's analysis and holdings regarding Counter-Defendant's motion to

20  strike, of the twelve causes of action pled by Mr. Tapia, seven claims are preempted by the

21  Copyright Act: both counts of intentional interference with contractual relations, intentional

22  interference with prospective economic advantage, negligent interference with prospective

23  economic advantage, conversion, theft by false pretenses, and the portions of the UCL predicated

24  on those preempted claims.  Because these claims are preempted and amendment would be futile,

25  they are necessarily **DISMISSED** without leave to amend.  *See Lamb v. Floor & Décor Outlets

26  of America, Inc.*, No. 13-cv-0390, 2014 WL 12570175, at *5 (S.D. Cal. Mar. 28, 2014)

27  (explaining that claims preempted by the Copyright Act must be dismissed without leave to

28  amend because amendment would be futile).  As for the remaining causes of action, including the

1   portions of the UCL claim not preempted, Counter-Defendants offer no specific argument beyond

2   reciting the legal standard for a motion to dismiss.  It is the burden of the party bringing a motion

3   to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have

4   not been met.  *See Bryant v. Apotex, Inc.*, No. 12-01377, 2013 WL 394705, at *5 (E.D. Cal. Jan.

5   30, 2013).  Accordingly, the Court cannot address Counter-Defendants motion to dismiss at this

6   time.

**CONCLUSION**

7

8       For the reasons set forth above:

9      1.   Counter-Defendants' motion to strike is granted in part and denied in part as follows:

10           a.   Counter-Defendants' motion to strike the first cause of action for defamation is

11                **DENIED**.

12           b.   Counter-Defendants' motion to strike the second and third causes of action for

13                intentional interference with contractual relations are **GRANTED** without

14                leave to amend.

15           c.   Counter-Defendants' motion to strike the fourth cause of action for breach of

16                contract is **DENIED**.

17           d.   Counter-Defendants' motion to strike the fifth cause of action for fraudulent

18                misrepresentation against Hyphy and Mr. Martinez is **GRANTED** with leave

19                to amend.

20           e.   Counter-Defendants' motion to strike the sixth cause of action for fraudulent

21                misrepresentation against Mr. Carbajal and Mr. Olvera is **DENIED**.

22           f.   Counter-Defendants' motion to strike the seventh cause of action for

23                invalidation of copyright registration is **DENIED**.

24           g.   Counter-Defendants' motion to strike the eighth cause of action for intentional

25                interference with prospective economic advantage is **GRANTED** without

26                leave to amend.

27           h.   Counter-Defendants' motion to strike the ninth cause of action for negligent

28                interference with prospective economic advantage is **GRANTED** without

leave to amend.

       i.  Counter-Defendants' motion to strike the tenth cause of action for conversion is **GRANTED** without leave to amend.

       j.  Counter-Defendants' motion to strike the eleventh cause of action for theft by false pretenses is **GRANTED** without leave to amend.

       k.  Counter-Defendants' motion to strike the twelve cause of action is **DENIED** as based on the defamation and fraudulent misrepresentation claims and **GRANTED** without leave to amend on all other grounds.

2. Counter-Defendants' motion to dismiss is granted in part and denied in part as follows:

       a.  Counter-Defendants' motion to dismiss the first cause of action for defamation is **DENIED**.

       b.  Counter-Defendants' motion to dismiss the second and third causes of action for intentional interference with contractual relations are **GRANTED** without leave to amend.

       c.  Counter-Defendants' motion to dismiss the fourth cause of action for breach of contract is **DENIED**.

       d.  Counter-Defendants' motion to dismiss the fifth cause of action for fraudulent misrepresentation against Hyphy and Mr. Martinez is **DENIED**.

       e.  Counter-Defendants' motion to dismiss the sixth cause of action for fraudulent misrepresentation against Mr. Carbajal and Mr. Olvera is **DENIED**.

       f.  Counter-Defendants' motion to dismiss the seventh cause of action for invalidation of copyright registration is **DENIED**.

       g.  Counter-Defendants' motion to dismiss the eighth cause of action for intentional interference with prospective economic advantage is **GRANTED** without leave to amend.

       h.  Counter-Defendants' motion to dismiss the ninth cause of action for negligent interference with prospective economic advantage is **GRANTED** without

leave to amend.

    i.   Counter-Defendants' motion to dismiss the tenth cause of action for conversion is **GRANTED** without leave to amend.

    j.   Counter-Defendants' motion to dismiss the eleventh cause of action for theft by false pretenses is **GRANTED** without leave to amend.

    k.   Counter-Defendants' motion to dismiss the twelve cause of action is **DENIED** as based on the defamation and fraudulent misrepresentation claims and **GRANTED** without leave to amend on all other grounds.

IT IS SO ORDERED.

Dated:   **March 18, 2025**

UNITED STATES DISTRICT JUDGE